Our first case is 522-0064, Holtmann v. Citizens Community Bank. Mr. Coedo, are you ready to proceed? I am. Go right ahead. Justice Schor, welcome to the first day here. And I apologize to the court, I am battling a little bit of a bug. The product of having a kid in daycare, I'm almost battling something. So if I need to speak up, please let me know. I know your honors are familiar with the factual background and the pleadings, so I'll try to be as concise as possible. Starting with the factual history of this case, there's really three relevant time frames. The parties in this case, I represent Glenn and Kimberly Holtmann. Actually, I apologize, your honors, I should probably start procedurally. Since the filing of this appeal, Mrs. Holtmann has passed away, so to the degree of the court, no longer needs to make any consideration of her claims. This appeal is about both Mr. and Mrs. Holtmann's claims, but they both are in regards to claims for the Illinois Consumer Fraud Act and constructive fraud. Glenn and Kimberly Holtmann own a small farm, family farm in Germantown, Illinois. They've run it for decades. And the defendant in this matter, Citizens Community Bank, is a small bank in Mesquota, Illinois, where I believe the record reflects the Holtmanns did their banking exclusively for the duration of their business. And that's very relevant to the allegations of our complaint. Essentially, when I said there's three different factual timelines that are relevant here, the first starts back in January of 2007 when the plaintiffs had to file for bankruptcy. Through the federal bankruptcy process, they actually reaffirmed their home loan and other loans with the defendant, Community Citizens Bank. And as of June of 2008, so roughly a year and a half later, the bank, despite being a party to the bankruptcy and despite having executed the reaffirmation documents that restructured their home loan, actually went so far as to file what we refer to as a charge-off on the plaintiff's credit statement. Essentially, for anybody who would view their credit statement, it would look like they were deficient in their original home loan and that that deficiency and that debt had not been cleared up by the bankruptcy or that Citizens Community Bank was not a party to the reaffirmation and discharging of that debt. Essentially, it hurt their credit reputation. It hurt their credit history. And as is laid out in the allegations of plaintiff's complaint, as well as the supporting factual record, it impacted their ability to obtain credit for their personal lives and their business for several years, for almost five years. And that's the second time frame that's relevant here to our case. And that is that from 2008 to 2012, there are numerous occurrences where the Holtmans are trying to secure loans so they can buy farm equipment, so they can refinance and get the things necessary for their farm business, as well as trying to secure financing for personal automobiles, even things like getting a furnace for their home. This damage to their credit reputation often prevented them from securing any type of reasonable interest rate from any other lending institution. And as alleged in our complaint, the information furnished on their credit report was false. It goes beyond just a simple scrivener's error, a simple oversight. As attached and made part of the record, we attached various deposition transcripts from during the summary judgment process. The most relevant two witnesses in this case were Mr. Holtman and a loan officer for Citizens Community, a loan officer by the name of Ted Flath. Ted Flath's testimony, which mirrored the plaintiff's testimony in this case, was that, one, he had been Holtman's personal loan officer really for decades, and that he was constantly giving them advice and guidance about their investment ability, about their ability to secure credit. But in particular, there was representations by the bank made that the reason they couldn't get credit elsewhere was because they were in bankruptcy. Not that this charge-off was on their credit record, but the fact that they had even participated in a bankruptcy process, which was false. And but... I have a question. Yes, sir. What is your response to the appellee who says your brief is inadequate under 341H? So I believe we made it part of the record, Your Honor. All of the exhibits that were attached to the underlying motions for summary judgment and then the information or the testimony that's referred to now in our appellate brief, I believe has made reference to and encompassed in the overall record for the Court's consideration. To the degree there was an issue with citation errors in our brief, I would hope that those need deficiencies would be clarified by our submission of a full record with sworn deposition transcripts. Thank you. Thank you. So moving on to what happens here is it not only credited my client's ability to obtain credit and further their business, but it also provides a financial benefit to Citizens Community Bank because the plaintiffs in this matter believe this is the only place they can borrow money from now, that they're fortunate to be able to secure things like a 16% interest rate from Citizens Community Bank. And again, to the same deposition transcripts I just referenced, eventually the loan officer, the agent of the defendant, admits to the plaintiffs while sitting at their kitchen table one day that, no, we've known that this false information was on your credit report for the last four years. We knew it every time you were applying for a loan. We're trying to restructure your debt at a higher interest rate with our bank. And then the deposition transcript even goes so far as to say that the management of the bank instructed specifically the loan officer not to tell clients when they file charge-off information on their credit reporting. So one of the underlying issues in the trial court was whether or not my clients ever tried to secure their own credit report. And as Mr. Holman testifies, he never thought he had to because at that time he trusted the loan officer, Ted Flath, who was intimately involved with both their business and their personal lending. He further testified to not only farm equipment they couldn't secure, other things for the farm they couldn't secure, but ultimately going on to the fourth year of this charge-off being falsely filed, they're denied even basic human needs like ability to borrow money for a home furnace and to secure the basic things they need for their personal and home funding. The last actual part of charge-off is that after they discover this false information and after Ted Flath finally does confess to knowing about it and leaving it there and the impact it's had, then the Holtmans do take the necessary steps to correct their own credit record. And they do so expeditiously upon discovering this charge-off exists. Procedurally, this was originally a 12-count complaint, but only an issue before the court here is the final four, which are the Illinois Consumer Fraud Act violations and the constructive fraud allegations. We did not appeal any of the prior dismissals or trial court rulings on the other eight counts. That brings us to the Harlem matter legally. I'm sorry, from my timeline, is there a clock that I'm? There's a key up there. Okay. On the left. Okay, thank you. Essentially, it comes down to this. For the Illinois Consumer Fraud Act, the FLEs contend that we did not demonstrate economic damages or that any demonstration of non-economic damages in the case law that we cite to is insufficient. First, as far as the overall underlying elements, especially at this stage where this case was dismissed on summary judgment, I believe that the plaintiff absolutely made their prima facie case to submit to a prior fact that there were material representations made by the defendant. The plaintiff relied on them, and they relied on them to their detriment. That leaves really the last element, which is the damages issue. One, as we refer in our brief, there has been evidence of economic damages, sufferance. I mentioned the issues about the ability to borrow or secure funding for the farm equipment and the loss of income opportunity to the business, as well as personal issues, like, again, as in the deposition transcript, about inability to get financing for a home furnace and other ways in which the plaintiff suffered pain and suffering from this false credit information. The second prong is, we cite to the Roach case, and which is kind of a prime example and analogous to this matter, in which a car dealership furnished false information, misleading information, that the plaintiffs in that case relied on to their detriment to not obtain an extended warranty. And the trial court in that matter found that the Illinois Consumer Fraud Act did provide for non-economic damages, and on their own, the trial court issued a $750 fine for those non-economic damages, finding that the other elements had been met. Here, I think we have both. We have demonstrated through the plaintiff's testimony that they suffered economic damages. Now, to the degree a trier of fact would quantify that, we would be presenting our client to testify to the loss of their business and with the failure to obtain reasonable credit, how that impacted their lives. And then the non-economic side, I think the case law is clear, and again, the Roach case is analogous that the Illinois Consumer Fraud Act would allow for potential award for considerations of things like aggravation and inconvenience, which again, there's a genuine issue of material fact based on the testimony we have from the loan officers and the plaintiffs and some of the other witnesses from the bank that have been deposed in this matter. So there are genuine issues of material fact. There has been evidence introduced from the plaintiff's position, and what we're seeking here is obviously to just go back to the trial court and allow a trier of fact to make these decisions as opposed to the circuit court judge. The second legal issue for the court's consideration is our claim of constructive fraud. The general issue raised by the appellee here is that we have not met our burden that a fiduciary relationship existed, that this would be akin to a simple loan officer-creditor-debtor relationship. Again, the deposition testimony that is attached as an exhibit demonstrates that the relationship here between Citizens Community Bank through its agent, Ted Flath, rises way above and beyond the typical dynamics of a lender-creditor relationship. Ted Flath was exclusively their loan officer, their financial advisor, and the person who they came to for all matters pertaining to both personal and professional lending needs. And as I think the case law would cite to, the determination of a fiduciary relationship is always determined by the specific circumstances and facts of that relationship. There is no general sense of just because you're a bank, you can't be in a fiduciary relationship with a debtor. It comes down to the individual facts, and certainly here we think that those facts would rise to a level at least to be submitted to a trier of fact to make a factual determination of a fiduciary relationship existed. Can I say if I may? Yes. How do you reconcile that statement with the case law that's presented that says that essentially a lender and borrower relationship does not give rise to a fiduciary relationship? My interpretation of the case as cited to by the FOA is that it's not in contradiction, though, with the larger general legal premise, which is that it's always a factual determination based on the specific circumstances of a relationship. I interpret the case law cited by the FOA to be as a general principle in legal law, that almost the reverse, which is a loan officer or a debtor and a creditor, a lender and a creditor, are not per se in a fiduciary relationship. It's something else we need to revise to the level of creating a fiduciary relationship, and that's where we think we have a specific factual background that would take it from that starting position. And, again, one that we would ask to try or fact make that determination. Thank you. Before we let you go, counsel, I'm assuming opposing counsel is going to bring this up, but how do you respond to their argument that the circuit court's first summary judgment said those claims were preempted by the federal statute? I think that the court did err in making a determination that our allegations under the Illinois Consumer Fraud Act, as well as the state constructive fraud claim based on fiduciary duty, are preempted by the Fair Credit Reporting Act. As I mentioned, I think that's reflected in the fact that we didn't actually appeal the other preemption decisions that the trial court made in finding that some of those allegations were preempted. I think, again, the Roach case has somewhat of an analogous background. Again, there you're talking about misrepresentations that may or may not have had some federal, a way in which they've touched on federal law or other federal issues, but the Illinois Consumer Fraud Act claims were allowed to move forward to a try or a fact. Thank you. And what about the Apley's argument that there is no evidence in the record as to the credit score after the charge-off, before or after? In large part, that would come down to the testimony we would offer from the loan officer, Mr. Flatt, as well as the representations and experiences my clients testified to about being denied from banks. Although I would acknowledge because we don't have a physical credit report printed out in those timelines, that would be the type of thing that the try or fact would have to assess the weight and the credibility of the evidence that we do have to present. But I think we would have a considerable amount of circumstantial evidence, including the increased interest rates that my clients were constantly having to pay through the defendant's bank that would reflect what was going on with their credit at that time. Thank you. Thank you. Thank you, Your Honor. Thank you. Obviously, Counsel, you have your time for your rebuttal. I'm sorry? You'll have your time for rebuttal. Oh, thank you. Counsel? Good morning, Your Honors. May it please the Court, Counsel. And just before I – I can't remember if I – Mr. Coyne will do that. Make sure you make for the record of your name so we have that. I apologize. May it please the Court, my name is Katherine Bosky-Weiler, and I represent Appalachian Citizens Community Bank. Your Honor, before I start, congratulations on your first argument today. Thank you. We're, as practitioners, very happy to have you. Thank you. The Circuit Court properly granted Citizens Community Bank summary judgment on all of plaintiff's claims, and this Court should affirm. I'd like to start, actually, with a question that was just asked, Your Honor, about finding preemption. And that can be disposed of quickly for two reasons. Number one, because it's been entirely forfeited. In fact, Appellant's counsel advised this Court this morning that none of those allegations that were disposed of as – by a finding of preemption are at issue in this appeal. They are not. And they are not because there has been no appeal from that finding. There has been no challenge to the trial court's finding of preemption. And there has been no argument today about preemption, no substantive argument. There's a reason for that. It's because that finding was entirely correct. The Second Circuit has been very clear about this in the Perttilt decision. If you'll indulge me for just a second, I'll give you the citation. I'm sorry, Purcell v. Bank of America. It's 459F3-622. It's a 2011 case that Judge Easterbrook wrote. The FCRA totally preempts State statutory and common law claims if predicated on conduct arising out of reports provided to credit agencies. That's exactly what we're talking about here. And in addition to that finding having been entirely correct as to the underlying claims, the eight claims for which summary judgment was granted in the trial court which are not at issue here, that finding should also be dispositive of the four claims that are at issue before this Court. Because the conduct is entirely premised on that allegation, that there was an improper report to a credit agency and that's what led to plaintiff's claims in this case, that should be preempted as well. And obviously this Court can affirm on any basis evident from the record that is evident from the record. So the Court doesn't even need to get into the substance that's discussed in the briefs. But to the extent the Court does want to discuss that substance, once again, the trial court correctly granted summary judgment on all of those remaining counts. So let's start with counts three and four. Those are the alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiff is correct to focus primarily on the question of damages because that ultimately is the fundamental failing in those allegations. There are certainly issues with the remaining prima facie elements of that claim. But ultimately, the lack of any claim of damages or, excuse me, any evidence of damage, that is what is dispositive of those two claims. There's no evidence. There's no claim even of actual damages in this case. The only claim that the plaintiff has made over the course of discovery has been the plaintiff's assertion that somehow his credit rating was affected by what he is categorizing as a false report. To be very clear, the bank disagrees with that. However, we recognize for purposes of this hearing, that's a disputed issue of fact. That's understood. But I want to be very plain that the bank absolutely disagrees that there was any incorrect reporting that happened in this case. That said, there are no actual damages evident anywhere in the record. There's nothing. And, Your Honor, you asked about credit reports and what could the trial look at. And there's nothing related to a credit report in the record. That's a fundamental problem. It can't just be the plaintiff's theory that somehow the plaintiff was affected by this, that the plaintiff's credit score was affected by this, without anything beyond that assertion. And that's particularly notable in this case because what is evident from the record is that the plaintiff repeatedly filed for bankruptcy protection. There's nothing wrong with that. But the plaintiff doesn't disagree that that does affect your credit report. In fact, the plaintiff, in rather colorful language, acknowledges that during his deposition. That has a significant impact on a credit report. There is nothing in the record that suggests that the specific issue about which the plaintiff complains here ultimately caused damages. But more importantly, even more importantly — I mean, would bankruptcy affect a credit report a lot more than one small charge-off loan? Based on my lay knowledge, I would agree with the Court. There's nothing specific. There's nothing in the record about that, I take it? That's right. There's nothing specific because there's no expert testimony. There's nothing about any sort of analysis of how the alleged wrongdoing in this case could have affected the plaintiff. And that is crucial to any sort of quantification of damages. But in addition to that, there's no actual damage identified. Nothing. And you have asserted that there are a number of arguments from the plaintiff that are forfeited. Would you explain that? Fundamentally, Your Honor, the problem with the way the complaint — there are two separate issues. Let me approach it that way. One is related to the way the complaint — or, excuse me, the way the opening brief is drafted. And then as a separate issue, there is how were things argued on summary judgment in the trial court below. Because those are two separate problems related to forfeiture. In terms of what happened in the trial court below, there are only — the plaintiff only raised as evidence in support of the plaintiff's claims the allegations made in the complaint, in the second amended complaint, which is the operative complaint. That's not sufficient to create an issue of fact, and that creates a forfeiture problem. When we're looking at the opening brief, we have similar issues, but they're in the So, for example, the statement of facts that's presented to the court in the opening brief cites only to the second amended complaint. There are no citations to any sort of evidence in support of these allegations. So these build on one another. They do come from the same root problem. And on summary judgment, it's not sufficient to cite to the plaintiff. Certainly not. Certainly not. And that's why it is so important to have that evidence, because allegations do not create disputed issues of fact. Allegations may get a plaintiff past the motion to dismiss phase, and actually that's exactly what happened in this case. After reviewing motions to dismiss, the trial court determined that the allegations were sufficient to state potentially a cause of action. But on summary judgment, in evaluating the evidence of record, the trial court determined there's nothing here. There's not enough. That then is particularly notable related to counts three and four. Those are the allegations. Again, the Consumer Fraud and Deceptive Business Practices Act. Because plaintiff just advised the court that there is a case that would allow the plaintiff to proceed on those claims if alleging only non-economic damages. That's the Roach case. And that's simply not accurate for a few reasons. First, because the Illinois Appellate Court, the first district, has specified exactly what the statute says. This is, again, the Illinois Consumer Fraud and Deceptive Business Practices Act. It's 815 ILCS 505-10A. This is the statute itself. Quote, any person who suffers actual damage as a result of a violation of this act committed by any other person may bring an action against such person. Unquote. Actual damages. It is specified in the literal language of the statute. And the Illinois Appellate Court, your sister court in Chicago, has reflected that in the language of its decision in the Morris case. That's 392 Illap 3rd, 399 at 402. Once again, quote, only a person who suffers actual damages as a result of a violation of the Consumer Fraud Act may bring a private action. Are you reading from that case now? I'm sorry, Your Honor? Are you reading? I am. That's correct. Can you tell me the author and panel members? I can if the court will give me one moment to grab it off of the desk. Just a second. The one case, Your Honor, I did not bring with me to the podium. It's a 2009 case, and the panel included Justice Cahill, Justice O'Malley, and Justice Joseph Court. And they made that specific determination. And it's all on page 402. The quote that I just gave to the court is not the only relevant quote in that paragraph. It is an entire paragraph that discusses the absolute need for economic damages in order to be able to bring a private right of action. In this case, there have been no actual damages alleged. There is only plaintiff's theory that potentially somehow the plaintiff's credit reporting score was affected. But there's nothing in support of that claim. There's nothing else that establishes actual damages. So on that basis alone. There's even no evidence of the credit score. That's correct. There's only the plaintiff's theory. And those are the allegations in the complaint. That is the entire basis of the evidentiary support that the plaintiff has offered this court to avoid summary judgment. That does not create a disputed issue of fact that should go to trial. That is a situation in which summary judgment is properly granted for the defense. And that's what happened in this case. The second set of claims are the constructive fraud claims. Those are counts 11 and 12. And once again, we have that fundamental problem of no actual damages. But in addition to that problem, which the analysis applies equally to why summary judgment is appropriate on those constructive fraud claims as to the counts 3 and 4 as to the claims under the Illinois Consumer Fraud Act. In addition to that, there is another fundamental legal hurdle that the plaintiff cannot overcome on the plaintiff's constructive fraud claims. And that's this issue about fiduciary. Was the relationship in this case a fiduciary relationship? And once again, we have a decision from the first district that specifies in this type of situation, meaning this type of relationship between a banker and the bank's client, a bank loan officer. That does not create a fiduciary relationship. This is a quote from Northern Trust Company v. HALAS, H-A-L-A-S, 257-565. This is at page 572. Quote, it is well settled that a mortgage or a mortgagee relationship does not  Furthermore, normal trust between friends or businesses plus a slightly dominant business position do not operate to turn a formal contractual relationship into a confidential or fiduciary relationship, unquote. That is exactly the relationship that is described in this case. It is not a friendship. It is not a close familial relationship. There are no family relations between these entities. This was not a situation in which the plaintiff had no experience dealing with the bank, no experience with borrowing, no experience with any sort of loans. There's testimony in the plaintiff's deposition, which actually is of record, in which he describes being quite experienced. He's been working with loans for years. He's been working as a farmer and running a small trucking company for decades and was accustomed to working with banks and needing to apply for loans and needing additional funds. So this is not a situation where the plaintiff was entirely unaccustomed to that environment. He had been in it repeatedly. That means that none of the potential exceptions to the formation of a fiduciary relationship are met here. This is just a straightforward relationship between a mortgagor and a mortgagee. That does not give rise to a fiduciary relationship. And with that, for those two reasons, because there are no actual damages and also because there is no fiduciary relationship, at that point, the plaintiff was unable to articulate a prima facie claim for constructive fraud. And the trial court properly granted summary judgment for those claims as well. There simply is no evidence of record to support the plaintiff's claims. There are no disputed issues of fact. The trial court properly granted summary judgment, and this court should affirm. Unless there are further questions. Counsel, go back to a point you were making just a minute ago. I think this is from your brief. Mr. Holtman, in maybe a deposition, basically stated that he did not look to Mr. Flatt for management of his financial affairs, correct? That's exactly right. Not for management of financial affairs. He says, I believe in the next sentence, advice related to the paperwork, the terms of the loan. That would be expected when you were working out the terms of a contract. But he did not go to Mr. Flatt for advice about his finances, for management of his money, and that could give rise to a fiduciary relationship. That's not what we have here. And was that deposition attached by the plaintiff in opposition to the motion for summary judgment? Not in full, Your Honor. Only portions of it. And the portions that are attached to the motion for summary judgment are, as I have described, they do not include facts that would somehow suggest anything related to actual damages for either claim or evidencing any sort of a fiduciary relationship. And those are the facts the court would need if it were to determine there's a disputed issue effect. The court would have to examine those particular cases. That's correct. And they certainly have not been referenced in the response, or excuse me, in the opening brief. If there are no other questions. Justice Schorler or Justice Moore, do you have any final questions? No, thank you. Thank you, Counsel. Thank you, Your Honors. Why don't we go right ahead with your rebuttal. Thank you, Your Honors. And I'll start with my rebuttal. My name is Lloyd Quito, and I represent the plaintiffs in this matter. I apologize. That was on me. If I could just kind of take linearly the arguments made by counsel. First is to the issue of preemption. To the degree the Fair Credit Reporting Act preempted some of the original allegations of this complaint, those were allegations for such things as libel or damage to credit reputation or different classifications of damages than that which is contemplated by the Illinois Consumer Fraud and Deceptive Practices Act. And that's why there was multiple stages of motions to dismiss, of previous stage motions for summary judgment. And the first stage of the motions for summary judgment, the Illinois Consumer Fraud Act claims survived while even the trial court considered preemption. And that's, again, why we're not appealing those issues here today. We're trying to be very specific. I asked several questions of your opposing counsel. Did she answer correctly? I would distinguish her answers. No, I wouldn't say they were any correct. Your Honor, we included as part of the appendix and part of the record, plaintiff's response in opposition to defendant's motion for summary judgment. It was filed December 2nd of 2021. And although it's true we didn't include the full several hundred pages of deposition testimony, we included substantial amounts of Mr. Flatt and Mr. Holtman's testimony. And if I could, if I could walk through just a few of those answers that, again, are part of the record here and were made part of the record for the trial court's consideration at the time. Counsel, I would suggest we can read the record. Okay. And I don't want you to take up your time on these other things. It's short to go through something like that. Certainly. Your Honor, I would only ask that when the court does review the record, the way Mr. Flatt lays out, he and the bank's understanding of the forbearance agreement entered with the bank, their awareness of the bankruptcy, his knowledge and expertise with filing charge-offs, his admission that it was falsely filed. And there's actually reference to two charge-offs in the deposition transcript, a $14,000 one and a $65,000 one. I would also, as far as the argument about actual damages, in the transcript we included from Mr. Holtman's deposition, he gives very specific instances of times where he was denied lending. Specific automobiles he tried to have refinanced, specific farm equipment he was unable to obtain because of the credit issue. And then, of course, as I've mentioned before, personal issues, for example, obtaining financing for even like a home furnace and things of that nature. When you identify those personal issues, are they in the record? They are in the record, yes, sir. And what are they? In particular, like the most glaring one that Mr. Holtman testifies to is that the bank, he was unable to obtain any financing to have a furnace for his home in which he lived with his wife and daughter, personal automobiles in addition to the professional farm equipment that he needed to obtain or professional trucking equipment. Do you disagree that he had borrowed bank proceeds? I do not. I do not. But I do believe that the forbearance agreement would have preempted the need or ability to file these charge-offs we discussed, and it was our anticipation at trial to use the defendant's own expert witnesses and independent expert witnesses, the bank president and Mr. Flapp, to demonstrate that evidence as opposed to retaining a controlled expert witness. And, again, the president of the bank had been deposed. So I realize I'm almost out of time. To the degree, though, that the preemption isn't more specifically detailed in our appellate response, I do believe that we properly identified the two issues on appeal. The first, the trial court erred in granting summary judgment in favor of defendants as to counts three and four. You know, we focused the meat of our analysis on the economic issues and anticipation of those we brought to the court, but the issue presented is that the trial court erred in granting summary judgment for those counts to begin with, and then similarly that the trial court erred in granting summary judgment on the constructive fraud claims. I'm going to ask, Your Honors, at this stage to send the case back to the trial court, allow limited discovery to be completed, and allow the trier of fact to make determinations on these genuine issues of material fact as to whether a fiduciary relationship existed, whether my client suffered actual damages, economic and non-economic, and for us to have that opportunity in court. Well, thank you. Before we let you go, Justice Schiller, any questions? No, thank you. Justice Moore? No questions. I took up quite a bit of your rebuttal time. Do you have anything else you want to add? I don't, Your Honor, unless you have any other questions. All right. Thank you, Counsel. Thank you. Obviously, we will take the matter under advisement. We will issue an order in due course.